HERMAN HEDICKE v. HIGHLAND SPRINGS COMPANY.[1]

December 24, 1931.

No. 28,637.

[1]Reported in 239 N. W. 896.

*John T. Kenny* and *Weikert, Lohmann & Felhaber,* for appellant.
*Keller, Broady & Chapin,* for respondent.

HOLT, J.

The appeal is from the judgment. Plaintiff had a verdict; but, upon defendant's motion in the alternative for judgment notwithstanding the verdict or a new trial, the court ordered judgment for defendant.

Defendant is engaged in the business of bottling and selling spring water in the city of St. Paul. Plaintiff had been in its employ some eight months previous to March 22, 1929, washing and filling bottles, loading on delivery trucks, and delivering to customers. The bottles used are one-gallon, two-gallon, and five-gallon bottles. After the bottles are washed, the one-gallon bottles are placed in crates upon a hand truck, four bottles in each crate; the two- and five-gallon bottles are placed one in each crate. The crates are of wood, having four upright posts to which are nailed slats about two inches wide, one at the top, one near the bottom, and one near the middle. The bottom is of slats or boards. When the bottles are in their

cases they are filled, then trundled to the side of the delivery truck at the loading platform, and loaded for delivery. In making deliveries the filled bottles are taken out of the crate and the empty ones put in place. When the truck returns with the crates of empty bottles the crates are unloaded and placed upon the hand truck, and the cleansing, refilling, and loading is repeated. In unloading the crates of empty bottles, plaintiff testified that the customary way was to take two crates containing two-gallon bottles at one lift, one in each hand; that in doing so, shortly after the noon hour on March 22, 1929, he ran a sliver in the long finger of the left hand; that he noticed that one of the slats was loose or broken; that he stopped to pull out the sliver; and that as he tossed the crate to one side, as was the practice with defective crates, it fell to pieces.

It appears that infection set in, and the evidence is clear that plaintiff was laid up for some weeks before the hand and arm could be used at all. There is a radical dispute as to whether the hand became deformed as the result of the infection or was in that condition before. Defendant adduced medical and other testimony that the deformity was congenital. But that is unimportant on this appeal. For, even if there were no permanent injury, there was enough in loss of earnings and the pain and suffering for several weeks to preclude granting judgment notwithstanding the verdict.

The evidence shows that these wooden crates were procured from a factory or concern in the Twin Cities engaged in the manufacture of such appliances and were of the sort generally used for the purposes defendant used them. They may be likened to such simple containers as baskets, wooden grocery delivery boxes, and the like; ordinary simple tools or receptacles for the convenient handling and protection of wares and products in necessary moving or transportation. A glance at these crates would disclose that the main purpose was to protect the bottles. It is common knowledge that wooden boxes and crates so used are more or less knocked about, roughing or splintering the wood. To charge an employer engaged in farming, where wooden baskets are used, or in grocery or mer-

chandise business requiring wooden delivery boxes, or in bottling works, like defendant's, with the duty of inspection so that splinters or slivers therein shall not be found is unreasonable. To do so would virtually require the employer to become an insurer against all defects that develop in the use of a tool or appliance, however simple it might be. Reaching the conclusion that these crates were on a par with such simple tools as a hammer, shovel, and stepladder, the mere fact that in handling the same a sliver therefrom injured the employe does not tend to establish negligence on the part of the employer. We need not consider the alleged injury in the palm of the hand, or its cause, because the evidence is clear that the infection started in the finger from the sliver wound.

Plaintiff insists that the simple tool doctrine originates in or rests upon the defenses of contributory negligence and assumption of risk, that is, if the employe uses a defective simple tool he is negligent if he does not discern the defect so readily discoverable in a simple instrumentality, and, perhaps with more reason, defects therein arising in the ordinary use thereof are assumed by the employe. It is therefore argued that, since by statute, G. S. 1923 (1 Mason, 1927) § 4263, defendant is deprived of the two defenses named, upon which the simple tool doctrine is based or finds the reason for its existence, the doctrine itself is gone in this case. And 3 Labatt, Master & Servant (2 ed.) p. 2484, after referring to the divergent views concerning the basis upon which the simple tool doctrine rests, states his conclusions thus:

"It is submitted that, as has been indicated above, it is illogical and unreasonable to say that the master is free from the obligation of using ordinary care merely because the appliance to be furnished is a simple tool, but the better view is that the appliance being a simple tool, and entirely understood by the servant, the latter's obligations to his master and to himself are increased; and cases involving injuries from simple tools furnish a broader scope for the application of the various affirmative defenses which are ordinarily available to the master."

This reasoning in a measure tends to support the claim of plaintiff, that by taking away the defenses of contributory negligence

and assumption of risk from employers who decline to be under the workmen's compensation act, they also are deprived of the simple tool doctrine. But we do not consider this to follow. The burden is upon the employe to show that the neglect or failure of the employer to discharge some duty owing to the employe caused the injury for which damages are claimed. And where nothing more is shown than an injury from some defect which the ordinary use of a simple tool or appliance is likely to develop therein, a prima facie proof of negligence is not made out against the employer and no affirmative defenses are needed. Our decisions, moreover, predicate the simple tool doctrine upon the theory that as to such a tool the master owes the servant no duty to inspect for the purpose of discovering whether the ordinary use had produced some defect therein which would endanger the user. If there is no duty to discover and remedy such defects, of course there can be no negligence inferred from the mere proof that defects developed in the use of a simple appliance.

In Koschman v. Ash, 98 Minn. 312, 314, 108 N. W. 514, 515, 116 A. S. R. 373, the court said:

"But the master is under no duty to inspect simple or common tools, or to discover or remedy defects arising necessarily from the ordinary use of such instruments." A number of decisions from other jurisdictions are cited.

This rule of the simple tool was extended to a stepladder, certainly more complicated and liable to get out of order than this crate, in Dessecker v. Phoenix Mills Co. 98 Minn. 439, 108 N. W. 516. To the same effect is Anderson v. Fred Johnson Co. 116 Minn. 56, 133 N. W. 85.

"Under the rule, no liability rests on the master for the ordinary perils resulting from the use of common, simple tools, nor for those latent and usual defects or weaknesses, which, by reason of the character of the appliance, are presumed to be known to all men alike." Kromer v. M. St. P. & S. S. M. Ry. Co. 139 Minn. 424, 427, 166 N. W. 1072, 1073.

In Mollock v. G. N. Ry. Co. 162 Minn. 90, 91, 202 N. W.-49, it was said:

"The employer's duty does not require inspection of simple tools, for the purpose of discovering and remedying defects resultant from their use in the 'customary manner."

The same view was accepted as law in Thompson v. G. W. R. Co. 164 Minn. 494, 205 N. W. 439, but under the circumstances there present it was held not applicable to the defective clawbar involved. In Mozey v. Erickson, 182 Minn. 419, 234 N. W. 687, it was again held that an employer owes no duty to inspect a simple appliance— a stepladder.

So we think the law is established that no actionable negligence of an employer is shown when an employe is injured from a defect resultant from the ordinary use of a simple tool or appliance. And it matters not what affirmative defenses the statute has deprived the employer of, the employe must prove negligence if recovery is to be had for injuries received in the employment.

The judgment is affirmed.

